# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

### CIVIL CASE NO. 3:07cv414

| | |
|---|---|
| THOMAS ROBINSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>WIX FILTRATION CORP LLC, )<br>DANA-SPICER, INC. D/B/A WIX )<br>FILTRATION PRODUCTS )<br>DIVISION AND AFFINIA )<br>GROUP, INC. D/B/A WIX )<br>FILTRATION PRODUCTS )<br>DIVISION, )<br>)<br>Defendants. )<br>_____ ) | **MEMORANDUM OF DECISION<br>AND ORDER** |

**THIS MATTER** is before the Court on the Defendants' Motion for

Summary Judgment [Doc. 17].

## I.    Introduction

On August 29, 2007, the Plaintiff filed this action in the Gaston

County General Court of Justice, Superior Court Division, alleging wrongful

termination in violation of North Carolina public policy and retaliation in

violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §215(a)(3). [Doc. 1-2]. Upon service of the Summons and Complaint, the Defendants Wix Filtration, LLC, Dana-Spicer, Inc. d/b/a Wix Filtration Products Division, and Affinia Group, Inc. d/b/a Wix Filtration Products Division (collectively "Wix Filtration") removed the action to this Court on October 1, 2007. [Doc. 1]. This Court has original jurisdiction of the Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 and exercises supplemental jurisdiction of the Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).

After carefully considering the Defendants' Motion for Summary Judgment and the Memorandum and exhibits filed in support thereof [Docs. 17, 18, 19], as well as the entire record in this case, the Court concludes that summary judgment in favor of the Defendants is appropriate as to both of the Plaintiff's claims. Accordingly, the Defendants' Motion for Summary Judgment [Doc. 17] is granted, and this action is hereby dismissed.

## II.    Standard of Review

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As the Supreme Court has observed, 'this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d (1986)) (emphasis in original).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), cert. denied, 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522. If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

> A party opposing a properly supported motion for summary judgment may not rest upon the mere

allegations or denials of his pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. Furthermore, neither unsupported speculation, nor evidence that is merely colorable or not significantly probative, will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that reasonable minds could differ on a material point, then, regardless of any proof or evidentiary requirements imposed by the substantive law, summary judgment, if appropriate, shall be entered.

Id. (internal citations and quotation marks omitted). Nonetheless, in considering the facts for the purposes of a summary judgment motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574,587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Plaintiff has failed to respond to the Defendants' motion, and therefore, the facts presented by the Defendants are not in dispute. "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to a 'judgment as a matter of law.'" Custer v. Pan American Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993). "Therefore, even when the adverse party fails to respond to the motion for summary judgment, the court must review

the motion and the materials before the court to determine if the moving

party is entitled to summary judgment as a matter of law." Meyer v.

Qualex, Inc., 388 F.Supp.2d 630, 634 (E.D.N.C. 2005); see also Fed. R.

Civ. P. 56(e)(2) ("If the opposing party does not so respond, summary

judgment should, *if appropriate*, be entered against that party.") (emphasis

added).

## III.    Factual Background

At all times relevant to this action, Wix Filtration[1] owned and operated

a manufacturing facility ("Allen plant") in Gaston County, North Carolina.

[Doc. 1-2 at ¶3; Doc. 4 at ¶3].  From 1990 to August 2005, the Plaintiff was

employed as a telephone systems technician, servicing the

telecommunications systems for the Allen plant.  [Doc. 1-2 at ¶18;

Deposition of Thomas Robinson ("Robinson Dep."), Doc. 19-8 at 3].

In his Complaint, the Plaintiff alleges that on September 9, 2004, he

filed a putative class action lawsuit against Wix Filtration, alleging

---

[1]The Defendants assert that Wix Filtration Corp LLC is the only proper Defendant to this action. [Doc. 4 at ¶9.  It appears from the pleadings that the other named Defendants are current or former controlling members of Wix Filtration Corp LLC.  [Doc. 1-2 at ¶¶6-10; Doc. 4 at ¶¶6-10].  For the purposes of this motion, the Court will refer to the Defendants collectively as "Wix Filtration" or simply as the "Defendant."

violations of the FLSA for the failure to pay overtime. [Doc. 1 at ¶12]. That

lawsuit was settled in July, 2005. [Id. at ¶14]. The Plaintiff alleges that on

August 31, 2005, Wix Filtration terminated his employment. The Plaintiff

alleges that at the time of his termination, Wix Filtration advised him "that

his job was being transitioned to a function which would be outsourced" to

an independent contractor, known as Electronic Data Systems Corporation

("EDS"). [Id. at ¶¶15-16]. The Plaintiff alleges that following his transition

to EDS, he continued to work at the Allen plant performing "his normal job

duties without substantial change." [Id. at ¶17].

The Plaintiff alleges that Wix Filtration's contract with EDS was for

the outsourcing of services previously provided by Wix Filtration's IT

(Information Technology) Group. [Id. at ¶19]. He alleges that his position

as a Telephone Technician within the Maintenance Department was

therefore outside of the scope of outsourced services provided for in the IT

services contract agreement with EDS. [Id.]. He further alleges that while

all other employees who were transitioned into the employment of EDS

were part of the IT Group and performed services related to computer

network and computer software applications, the Plaintiff was the only

Maintenance Department employee or employee servicing the telephone

systems who was transitioned to EDS.  [Id. at ¶20].  The Plaintiff alleges

that after his termination and transition to EDS, Wix Filtration's employees

remained in charge of the maintenance of the telephone systems at the

Allen plant.  [Id. at ¶22].

The Plaintiff alleges that his termination was in retaliation for

exercising his rights under the North Carolina Wage and Hour Act and the

FLSA, and that as a result of his wrongful termination, he has lost wages

and suffered a diminished earning capacity.  [Id. at ¶¶25, 26].  He further

alleges that he has become "vocationally isolated and precluded from

opportunities for advancement and career training," thereby causing him

"to suffer increased anxiety and emotional distress."  [Id. at ¶30].

Wix Filtration has presented evidence of the following facts.  Since

the Plaintiff has not presented any evidence in response to the Motion for

Summary Judgment, these facts are not in dispute.

Wix Filtration entered into an agreement with EDS to outsource

certain IT and communications jobs.  [Affidavit of William "Buddy" Williams

("Williams Aff."), Doc. 19-3 at ¶5; Affidavit of Ron Masters ("Master Aff."),

Doc. 19-4 at ¶5; Affidavit of Scott Van Pelt ("Van Pelt Aff."), Doc. 19-5 at

¶5; Affidavit of Danny Davis ("Davis Aff."), Doc. 19-6 at ¶5; Affidavit of

Tommy Lawson ("Lawson Aff."), Doc. 19-7 at ¶5]. Telecommunications

was one of the functions outsourced to EDS. [Deposition of Kay Teixeira

("Teixeira Dep."), Doc. 19-2 at 4]. Therefore, employees who performed

substantial telecommunications duties, regardless of their job title or

classification, were outsourced to EDS. [Id. at 5; Van Pelt Aff., Doc. 19-5

at ¶15].

Prior to the outsource, the Plaintiff was transferred from the IT Group

to the Maintenance Department. [Robinson Dep., Doc. 19-8 at 2]. Despite

this change in department classification, the Plaintiff's job duties remained

essentially the same. [Id. at 3-4]. Because the Plaintiff performed

substantial telecommunications duties, his job would have been affected

by the outsource regardless of his department classification. [Van Pelt

Aff., Doc. 19-5 at ¶18].

The Plaintiff's job function, along with the job functions of dozens of

other employees, was outsourced to EDS as a result of a business

decision made at the corporate level. [Teixeira Dep., Doc. 19-2 at 2].

Since the outsource, no substantive telephone repair work has been

performed by any of Wix Filtration's employees at the Allen plant.

[Williams Aff., Doc. 19-3 at ¶17; Van Pelt Aff., Doc. 19-5 at ¶17; Lawson

Aff., Doc. 19-7 at ¶19]. Wix Filtration does technically retain some control over the telephone system; however, the only reason that it does so is because EDS has deemed the system to be outdated, i.e., a "legacy system." [Van Pelt Aff., Doc. 19-5 at ¶29]. Although EDS does not technically "control" the telephone system, it does provide the system service and maintenance. [Id. at ¶¶30-31]. Wix Filtration does not currently employ anyone with "telephone technician" duties similar to those previously performed by the Plaintiff. [Id. at ¶16]. While the Plaintiff alleges that other telephone technicians were not outsourced to EDS and that telephone maintenance is still being performed by Wix Filtrationt's employees, he has no direct knowledge of this. [Robinson Dep., Doc. 19-8 at 5-6].

## IV. Analysis

### A. Retaliation under the FLSA

The FLSA makes it unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. §215(a)(3). As in a case where a plaintiff

asserts unlawful discrimination in violation of Title VII, a plaintiff asserting a

retaliation claim under the FLSA may establish an employment

discrimination claim in one of two ways.  First, a plaintiff may present

"direct or circumstantial evidence that raises a genuine issue of material

fact as to whether an impermissible factor . . . motivated the employer's

adverse employment decision."  See Diamond v. Colonial Life & Accident

Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005).  Alternatively, the plaintiff may

present evidence giving rise to an inference of unlawful discrimination

under the burden-shifting framework established by the Supreme Court in

McDonnell Douglas Corp. v.  Green, 411 U.S. 792, 93 S.Ct. 1817, 36

L.Ed.2d 668 (1973).  Id.  Because the Plaintiff has not come forward with

any direct or circumstantial evidence that his transition to EDS was

motivated by an impermissible factor such as retaliation, the Court will

analyze his claim under the McDonnell Douglas framework.  Accordingly,

the Plaintiff is required to show:  (1) that he engaged in protected activity

under the FLSA; (2) that he suffered an adverse action by the employer

subsequent to or contemporaneous with the protected activity; and (3) that

there is a causal connection between the protected activity and the

employer's adverse action.  Darveau v. Detecon, Inc., 515 F.3d 334, 340

(4th Cir. 2008).  Once the Plaintiff has made out a prima facie case, the burden of production shifts to the Defendant "to articulate a legitimate, non-discriminatory reason for the adverse employment action."  Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004).  If the Defendant satisfies this burden, the Plaintiff must then "prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" Id. (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

Upon careful review of the record, the Court concludes that the Plaintiff cannot establish a prima facie case of retaliation.  Specifically, the Plaintiff has failed to present a forecast of evidence demonstrating any causal connection between his alleged protected activity and his transition to EDS.  The affidavits and deposition excerpts presented by the Defendant, on the other hand, establish that there were legitimate, non-discriminatory reasons for the Plaintiff's termination, namely the outsourcing of the Plaintiff's job, along with all other IT and telecommunications jobs, pursuant to an agreement with EDS.  [Williams Aff., Doc. 19-3 at ¶5; Master Aff., Doc. 19-4 at ¶5; Van Pelt Aff., Doc. 19-5

at ¶5; Davis Aff., Doc. 19-6 at ¶5; Lawson Aff., Doc. 19-7 at ¶5]. The decision to outsource the Plaintiff's job function, along with the job functions of dozens of other employees, was a business decision made at the corporate level. [Teixeira Dep., Doc. 19-2 at 2]. The Defendant also has presented a forecast of evidence that establishes that since the outsource, no substantive telephone repair work has been performed by any of the Defendant's employees at the Allen plant, [Williams Aff., Doc. 19-3 at ¶17; Van Pelt Aff., Doc. 19-5 at ¶17; Lawson Aff., Doc. 19-7 at ¶19], and that the Defendant does not currently employ anyone with telephone technician duties similar to those previously performed by the Plaintiff, [Van Pelt Aff., Doc. 19-5 at ¶16].

The allegations in the Plaintiff's Complaint to the contrary are simply insufficient to create a question of fact on this issue:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e) (2). For these reasons, the Court concludes that the Plaintiff's claim for retaliation under the FLSA must be dismissed.

**B. Wrongful Termination in Violation of North Carolina Public Policy**

The general rule in North Carolina is that "absent an employment contract for a definite period of time, both employer and employee are generally free to terminate their association at any time and without reason." Gravitte v. Mitsubishi Semiconductor Am., Inc., 109 N.C. App. 466, 472, 428 S.E.2d 254, 258 (1993). One exception to this general rule is the public policy exception:

> While there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent.

Coman v. Thomas Mfg. Co., 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989) (quoting Sides v. Duke Univ., 74 N.C. App. 331, 342, 328 S.E.2d 818, 826 (1985)). North Carolina courts have recognized that "[t]he public policy exception to the employment-at-will doctrine is a 'narrow exception.'" Roberts v. First-Citizens Bank, 124 N.C. App. 713, 721, 478 S.E.2d 809, 814, app. withdrawn, 345 N.C. 755, 487 S.E.2d 758 (1997) (quoting Williams v. Hillhaven Corp., 91 N.C. App. 35, 39, 370 S.E.2d 423, 425

(1988)).  "Wrongful discharge claims have been recognized in North Carolina where the employee was discharged (1) for refusing to violate the law at the employer's request, (2) for engaging in a legally protected activity, or (3) based on activity by the employer contrary to law or public policy."  Imes v. City of Asheville, 163 N.C. App. 668, 670-71, 594 S.E.2d 397, 399 (2004) (internal citations omitted).

The Court is not aware of any cases in which the North Carolina courts have recognized a cause of action for wrongful discharge where an employee claimed retaliation for pursuing a claim for overtime.  Even assuming that such an action could be maintained, however, the Plaintiff's wrongful discharge claim suffers from the same fundamental flaw that plagues his FLSA claim, namely, that the Plaintiff has failed to present a forecast of evidence establishing a causal connection between any protected activity and his employer's decision to transition him to EDS. See Salter v. E & J Healthcare, Inc., 155 N.C. App. 685, 693, 575 S.E.2d 46, 51 (2003) (holding plaintiff claiming retaliation in violation of North Carolina public policy must show (1) that he engaged in protected activity; (2) that the employer took an adverse action against him; and (3) that there is a causal connection between the protected activity and the employer's

conduct).  Because the Plaintiff has failed to make out a prima facie case

of retaliation, the Plaintiff's wrongful discharge claim under North Carolina

also must be dismissed.


# O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for

Summary Judgment [Doc. 17] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**, and

judgment shall issue simultaneously herewith.


Signed: December 3, 2008

Martin Reidinger
United States District Judge